Alex Rate
American Civil Liberties Union
      of Montana Foundation, Inc.
P.O. Box 9138
Missoula, MT 59807
Telephone: (406) 203-3375
ratea@aclumontana.org


Brett Max Kaufman*
American Civil Liberties Union
        Foundation
125 Broad St., 18th Floor
New York, NY 10004
Telephone: (212) 549-2603
bkaufman@aclu.org

**Pro Hac Vice Forthcoming*

**UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION <br>    125 Broad Street—18th Floor <br>    New York, NY 10004, <br><br> AMERICAN CIVIL LIBERTIES UNION FOUNDATION <br>    125 Broad Street—18th Floor <br>    New York, NY 10004, <br><br> AMERICAN CIVIL LIBERTIES UNION OF MONTANA FOUNDATION, Inc. <br>    P.O. Box 9138 <br>    Missoula, MT 59807, <br><br>            *Plaintiffs*, <br>    v. <br><br> DEPARTMENT OF DEFENSE <br>    1400 Defense Pentagon <br>    Washington, DC 20301, <br><br> DEPARTMENT OF HOMELAND SECURITY <br>    Washington, DC 20528 <br><br> DEPARTMENT OF THE INTERIOR <br>    1849 C Street, N.W. <br>    Washington, DC 20240 <br><br> DEPARTMENT OF JUSTICE <br>    950 Pennsylvania Avenue, N.W. <br>    Washington, DC 20530, <br><br>            *Defendants*. | Civil Action No. __ <br><br><br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** |

## Introduction

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. Plaintiffs American Civil Liberties Union, the American Civil Liberties Union Foundation (together, the "ACLU"), and the ACLU of Montana Foundation, Inc. ("ACLU-MT") seek the immediate release of records pertaining to cooperation between federal, state, and local law enforcement entities and between federal law enforcement entities and private security companies around preparations for anticipated protests against the Keystone XL Pipeline.

2.      In March 2017, President Donald Trump announced that he had formally approved construction of the Keystone XL Pipeline, a decision which generated intense public controversy and debate. The approval triggered calls for protest of the oil pipeline, similar to Standing Rock protests against the Dakota Access Pipeline in 2016. The Dakota Access Pipeline protests were met with a sustained response from law enforcement to shut down protest encampments, surveil protest activity, and prosecute protestors. Of particular note, as documented by *The Intercept*, this law enforcement response involved collaboration between federal and state or local law enforcement entities, and between governmental entities and private security companies.

3. With a new wave of environmental and Indigenous protests expected in response to Keystone XL, similar law enforcement coordination is anticipated in response to these protests. For example, on April 11, 2017, the *Omaha World Herald* reported that Morton County, North Dakota Sheriff Kyle Kirchmeier, whose department was involved in responding to the Dakota Access Pipeline protests, has been in communication with other states over how to respond to oil pipeline protestors.

4. Plaintiffs have obtained, through Right-to-Know requests to state and local entities, documentation that demonstrates coordination and collaboration with federal agencies, including, but not limited to, the following:

   a. In collaboration with the Montana Highway Patrol, the U.S. Department of Justice ("DOJ") presented a Social Networking and Cyber Awareness training in Circle, MT.

   b. DOJ hosted an "anti-terrorism" training in Fort Harrison.

   c. The Bureau of Land Management ("BLM") hosted a "Large Incident Planning Meeting" in Miles City, MT on June 12, 2018.

   d. The Federal Emergency Management Agency ("FEMA") hosted "Field Force Operations" trainings in Sidney, MT and Glendive, MT.

  e. The Department of Homeland Security ("DHS") and FEMA conducted a "Field Force Operations" training in Billings, MT on October 2–4, 2016.

  f. DOJ conducted a "law enforcement sensitive briefing about…criminal activity and protest activity" in January 2018.

5. These highly coordinated law enforcement responses to environmental and Indigenous protests raise questions about the Defendants' level of collaboration with state and local governments and with private security companies in anticipation of Keystone XL protests. Governmental surveillance of protests, and undue scrutiny of political speech, is a matter of great public concern.

6. Despite this public concern, little is currently known about the level of collaboration between federal, state, local, and private entities in preparation for Keystone XL protests. Limited publicly available evidence, in the form of memoranda and email correspondence, suggests that federal agencies are already preparing for these protests. But this evidence is sparse, and Plaintiffs seek wider disclosure of information about law enforcement coordination and collaboration.

7. Plaintiffs believe that public agencies are involved in pre-emptive planning and coordination with private, local, and federal entities to assist in efforts to further suppress Indigenous rights and environmental justice activism.

8. Disclosure of the records Plaintiffs seek through this action would greatly benefit the public. It would contribute significantly to the public's understanding of how deeply the federal government is involved in supporting state law enforcement efforts in response to environmental and Indigenous protest; how extensively law enforcement entities delegate responsibilities to private security contractors; and how comprehensively law enforcement entities have surveilled activists in anticipation of protests.

## Jurisdiction and Venue

9. This Court has both subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B).

11. Venue is proper in this Division under Local Rule 3.2(b) and Mont. Code Ann. § 25–2–125, as Missoula County is where Plaintiff American Civil Liberties Union of Montana's primary office is located.

## Parties

12. Plaintiff American Civil Liberties Union is a nationwide, non-profit, nonpartisan 26 U.S.C. § 501(c)(4) organization with more than 2 million members

dedicated to the constitutional principles of liberty and equality. The American Civil Liberties Union is committed to ensuring that the American government acts in compliance with the Constitution and the law. The American Civil Liberties Union is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public (in both its raw and analyzed forms) is a critical and substantial component of the American Civil Liberties Union's work and one of its primary activities.

13. Plaintiff American Civil Liberties Union Foundation is a separate § 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties.

14. Plaintiff ACLU of Montana Foundation, Inc. ("ACLU-MT") is a Montana non-profit corporation, established under the laws of the state of Montana with its primary office in Missoula, Montana. ACLU-MT is an organization that promotes and safeguards civil rights and civil liberties. As part of its mission, it is seeking public records from the Defendants that are relevant to its work, and will be disseminated to the general public.

15. Defendants Department of Defense ("DOD"), Department of Homeland Security ("DHS"), Department of the Interior ("DOI"), and Department of Justice ("DOJ") are departments of the executive branch of the U.S. government and are agencies within the meaning of 5 U.S.C. § 552(f)(1). The U.S. Army Corps of Engineers ("USACE") is a component of the Department of the Army ("Army") and a subcomponent of DOD. The Federal Emergency Management Agency ("FEMA"), the Office of Intelligence and Analysis ("I&A"), and the Transportation Security Administration ("TSA") are components of DHS. The Bureau of Land Management ("BLM") is a component of DOI. The Federal Bureau of Investigation ("FBI") and the Office of Legal Counsel ("OLC") are components of DOJ.

## Facts

### The Requested Records

16. On January 23, 2018, Plaintiffs submitted identical FOIA requests (the "Request") to the FBI, OLC, OSD/JS, DHS, USACE, and BLM. On March 8, 2018, Plaintiffs submitted the Request, modified to remove DOD-specific requests, to TSA. On April 2, 2018, upon notice from the FBI that the January 23 submission had been unsuccessful due to a defunct online portal for FBI FOIA requests, Plaintiffs submitted the Request, modified to remove DOD-specific requests, to the FBI.

17. With respect to all agencies listed above, the Request seeks "records created since January 27, 2017, concerning (1) Legal and policy analyses and recommendations related to law enforcement funding for and staffing around oil pipeline protests. Such recommendations may include, but are not limited to, declarations of a state of emergency by state and local entities in order to marshal additional funds, and requests by state or local entities for federal agencies to provide funding or personnel for counter-protest operations; (2) Travel of federal employees to speaking engagements, private and public meetings, panels, and conferences on the subject of preparation for oil pipeline protests and/or cooperation with private corporations in furtherance thereof; (3) Meeting agendas, pamphlets, and other distributed matter at speaking engagements, private and public meetings, panels, and conferences where federal employees are present to discuss preparation for oil pipeline protests and/or cooperation with private corporations in furtherance thereof; and (4) Communications between federal employees and state or local law enforcement entities or employees thereof, and between federal employees and private security companies or employees thereof, discussing cooperation in preparation for oil pipeline protests."

18. Plaintiffs sought a waiver of search, review, and duplication fees on the ground that disclosure of the requested records is "in the public interest" and because it is "likely to contribute significantly to public understanding of the

operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

19. Plaintiffs also sought a limitation of fees on the ground that Plaintiffs qualify as "representative[s] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

20. Plaintiffs requested expedited processing of the Request on the basis of a "compelling need" for the requested records as defined in 5 U.S.C. § 552(a)(6)(E)(v)(II).

Agency Responses

*USACE*

21. By email dated February 12, 2018, USACE acknowledged receipt of the Request and assigned it reference number FP-18-009115.

22. On July 17, 2018, Plaintiffs received a final response from USACE, disclosing seven pages of redacted emails, Ex. A, and withholding "one email consisting of five pages" in its entirety. Ex. B at 1. USACE claims Exemption 6 of the FOIA for the redacted emails, and Exemptions 5, 6, and 7(A) for the withheld email.

23. On August 3, 2018, Plaintiffs appealed USACE's Final Response on the grounds of inadequate search, improper withholding, and improper redaction. Plaintiffs have received no further correspondence from USACE.

24.     Plaintiffs have exhausted all administrative remedies because USACE failed to respond to Plaintiffs' appeal within the time required by statute.

*DHS*

25.     By letter dated January 25, 2018, DHS acknowledged receipt of the Request and assigned it reference number 2018-HQFQ-00539. DHS noted that it had forwarded the Request to component agencies FEMA, I&A, and the Federal Law Enforcement Training Centers (FLETC) to determine whether those offices had any equity in the request.

26.     By email dated February 16, 2018, DHS confirmed that "I & A advised that they will be searching for records for your request (FEMA too)."

*FEMA*

27.     By letter dated January 26, 2018, FEMA acknowledged receipt of the Request and assigned it reference number 2018-FEFO-00405. FEMA denied Plaintiffs' request for expedited processing, and conditionally granted Plaintiffs' request for a fee waiver. FEMA noted it had queried the appropriate FEMA subcomponent organizations for responsive records.

28.     By letter dated March 23, 2018, FEMA stated that it had conducted a comprehensive search of files within FEMA's Region VIII for responsive records, and was unable to identify any responsive records.

29. On June 14, 2018, Plaintiffs timely filed an administrative appeal of FEMA's determination that it has no records responsive to the Request. Plaintiffs alleged that FEMA had not engaged in an adequate search for these records. FEMA acknowledged Plaintiffs' appeal by letter on June 21, 2018, and denied it by letter on August 31, 2018.

30. Plaintiffs have exhausted all administrative remedies because FEMA failed to respond to Plaintiffs' appeal relating to the adequacy of FEMA's search within the time required by statute.

*I&A*

31. By letter dated February 16, 2018, I&A acknowledged receipt of the Request and assigned it reference number 2018-IAFO-00149. I&A stated it would search for items two, three, and four of the Request. I&A granted expedited processing and did not communicate any decision regarding Plaintiffs' requests for a fee waiver and a limitation of fees.

32. By email dated March 27, 2018, Plaintiffs contacted I&A inquiring about the status of the Request. Plaintiffs also provided I&A with a May 2017 Field Analysis Report, on which I&A collaborated, as an example of the type of record Plaintiffs were seeking in the Request. Ex. C & Ex. D.

33. By email dated June 22, 2018, I&A issued a final response to Plaintiffs' Request, providing no documents other than a redacted version of the

12

same, unclassified document Requesters had offered to I&A on March 27—nearly three months prior—as an example of the type of document that Requesters were seeking. Ex. E.

34. On June 28, 2018, Plaintiffs appealed the adequacy of I&A's search, as well as its redactions of an already unclassified, unredacted letter which Plaintiffs themselves had first provided to I&A. I&A acknowledged Plaintiffs' appeal by letter on July 2, 2018. Plaintiffs have received no further correspondence from I&A.

35. Plaintiffs have exhausted all administrative remedies because I&A failed to respond to Plaintiffs' appeal relating to the adequacy of I&A's search within the time required by statute.

*TSA*

36. By letter dated March 12, 2018, TSA acknowledged receipt of the Request and assigned it reference number 2018-TSFO-00198. TSA did not communicate any decision regarding Plaintiffs' requests for expedited processing, a fee waiver, and a limitation of fees.

37. By letter dated May 24, 2018, TSA stated that it had conducted a search and no records responsive to Plaintiffs' request were located.

38. On June 14, 2018, Plaintiffs timely filed an administrative appeal of TSA's determination that it has no records responsive to the Request. Plaintiffs

alleged that TSA had not engaged in an adequate search for these records. Plaintiffs have received no further correspondence from TSA.

39.     Plaintiffs have exhausted all administrative remedies because TSA failed to respond to Plaintiffs' appeal relating to the adequacy of TSA's search within the time required by statute.

*BLM*

40.     By letter dated January 29, 2018, BLM acknowledged receipt of the Request and assigned it reference number 2018-00388. BLM granted Plaintiffs' fee waiver request, and did not communicate a decision regarding Plaintiffs' request for expedited processing. BLM did, however, note that it had placed the Request into its "Exceptional/Voluminous" track, which it noted would require more than sixty workdays for processing.

41.     Plaintiffs have received no further correspondence from BLM. No records responsive to the Request have been released by BLM.

42.     Plaintiffs have exhausted all administrative remedies because BLM has failed to comply with the time limit for responding to FOIA requests.

*FBI*

43.     By letter dated April 6, 2018, the FBI acknowledged receipt of the Request and assigned it reference number 1401682-000. The FBI classified Plaintiffs as an "educational institution, noncommercial scientific institution or

representative of the news media," and stated that Plaintiff' request for public interest fee waiver was under consideration. The FBI did not communicate a decision regarding Plaintiffs' request for expedited processing. However, by separate letter also dated April 6, 2018, the FBI stated that "unusual circumstances" applied to the Request. The FBI informed Plaintiffs it could reduce the scope of its request in order to seek a determination on the request within 20 days.

44. By letter dated April 24, 2018, the FBI denied Plaintiffs' request for expedited processing, stating that Plaintiffs had not articulated an urgency to inform the public as it relates to this subject matter.

45. Plaintiffs have received no further correspondence from the FBI. No records responsive to the Request have been released by the FBI.

46. Plaintiffs have exhausted all administrative remedies because the FBI has failed to comply with the time limit for responding to FOIA requests.

*OLC*

47. By letter dated January 31, 2018, OLC acknowledged receipt of the Request and assigned it reference number FY18-058. OLC denied Plaintiffs' request for expedited processing, and noted it would make a determination concerning Plaintiffs' request for a fee waiver after determining whether fees would be assessed for the request.

15

48.     Plaintiffs contacted OLC by phone on April 10, 2018, requesting an update on the status of the Request. An OLC representative responded that the agency was "extremely behind."

49.     On April 25, 2018, Plaintiffs timely filed an administrative appeal from OLC's denial of the request for expedited processing. By letter dated May 11, 2018, OLC affirmed its denial of Plaintiffs' request for expedited processing.

50.     Plaintiffs contacted OLC by phone on May 11, 2018, requesting an update on the status of the Request. An OLC representative responded that the Request had been placed in "final review" and that the agency would have a decision on the Request by the end of the following week.

51.     Plaintiffs have received no further correspondence from OLC. No records responsive to the Request have been released by OLC.

52.     Plaintiffs have exhausted all administrative remedies because OLC has failed to comply with the time limit for responding to FOIA request, and because OLC has affirmed the denial of Plaintiffs' request for expedited processing.

## Causes of Action

53.     Defendants' failure to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

54. Defendants' failure to make an adequate search for records responsive to the Request violates FOIA, 5 U.S.C. § 552(a)(3)(C), (D), and Defendants' corresponding regulations.

55. Defendants' denials of Plaintiffs' requests for expedited processing violate FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations.

56. Defendants' denials of Plaintiffs' requests for fee waivers violate FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendants' corresponding regulations.

### Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Order Defendants immediately to release to Plaintiffs the records sought in the Request;
2. Enjoin Defendants from charging Plaintiffs search, review, or duplication fees for the processing of the Request;
3. Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and
4. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ *Alex Rate*

Alex Rate

                        AMERICAN CIVIL LIBERTIES
                        UNION OF MONTANA
                        FOUNDATION, Inc.
                        P.O. Box 9138
                        Missoula, MT 59807

                        *Counsel for plaintiffs*

September 4, 2018