**VICTORIA L. FRANCIS**
**MARK STEGER SMITH**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**2601 2nd Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone: (406) 247-4633 – Victoria**
         **(406) 247-4667 – Mark**
**Fax: (406) 657-6058**
**Email**: **victoria.francis@usdoj.gov**
        **mark.smith3@usdoj.gov**

**ATTORNEYS FOR DEFENDANTS/**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, and AMERICAN CIVIL LIBERTIES UNION OF MONTANA FOUNDATION, INC.,** | **CV 18-154-M-DWM** |
| **Plaintiffs,** | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| **vs.** | |
| **DEPARTMENT OF DEFENSE, DEPARTMENT OF HOMELAND SECURITY, DEPARTMENT OF THE INTERIOR, and DEPARTMENT OF JUSTICE,** | |
| **Defendants.** | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION ...................................................................................1

STANDARD OF REVIEW ......................................................................2

ARGUMENT ...........................................................................................3

I.   Where production did not occur within FOIA deadlines, the remedy is
     production, and all agencies have now produced responsive documents. .......3

II.  The agencies fully discharged their FOIA obligations by conducting
     searches reasonably calculated to uncover all relevant documents. ...............5

     A. Army Corps of Engineers. .............................................................6

     B. Bureau of Land Management .........................................................9

     C. Federal Emergency Management Agency ...................................10

     D. Office of Legal Counsel................................................................11

     E. Transportation Security Administration ....................................12

     F. Office of Intelligence and Analysis ...........................................15

III. Summary judgment is appropriate because all documents withheld
     properly fall within the FOIA exemptions. ..................................16

     A. Exemption § 552(b)(3)(A). .........................................................17

     B. Exemption §552(b)(4). ................................................................19

     C. Exemption §552(b)(5). ................................................................21

     D. Exemptions §552(b)(6) and (b)(7)(C). .......................................26

     E. Exemption §552(b)(7)(E). ...........................................................29

IV.  The FBI properly asserted a *Glomar* response under
     5 U.S.C. §552(b)(7)(A) & (E). ...................................................31

     A. If they exist, records responsive to Plaintiffs' request would be
        "compiled for law enforcement purposes." ..............................32

     B. The requested information is properly withheld under
        Exemption 7(A) because disclosure would interfere with FBI
        enforcement proceedings. ...........................................................33

C. The requested information is properly withheld under Exemption 7(E) because disclosure would reveal previously unknown investigative techniques, nullifying their effectiveness............................35

V.    Fee waivers are moot. ......................................................................38

CONCLUSION ....................................................................................38

CERTIFICATE OF COMPLIANCE .......................................................40

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLU v. CIA*,
  710 F.3d 422 (D.C. Cir. 2013) ............................................................31

*ACLU v. DOJ*,
  880 F.3d 473 (9th Cir. 2018) ..............................................................35

*ACLU v. FBI*,
  881 F.3d 776 (9th Cir. 2018) ..............................................................32

*ACLU v. United States Dep't of Homeland Sec. Office for Civil Rights & Civil*
  *Liberties*,
  2017 WL 3478658 (D. Ariz. Aug. 14, 2017)................................. 35, 36

*Assembly of the State of Cal. v. U.S. Dep't of Commerce*,
  968 F.2d 916 (9th Cir. 1992) ..............................................................22

*Bangoura v. U.S. Dep't of Army*,
  607 F.Supp.2d 134 (D.D.C. 2009) ......................................................27

*Bishop v. Dep't of Homeland Sec.*,
  45 F.Supp.3d 380 (S.D.N.Y. 2014) ....................................................35

*Brennan Ctr. for Justice at New York Univ. Sch. of Law v. DHS*,
  331 F.Supp.3d 74 (S.D.N.Y. 2018) ....................................................18

*Broemer v. FBI*,
  No. CV 08-05515, 2011 WL 13142587 (C.D. Cal. Apr. 22, 2011) ...................17

*BuzzFeed, Inc. v. DOJ*,
  344 F.Supp.3d 396 (D.D.C. 2018) ................................................. 34, 37

*Carlson v. United States Postal Serv.*,
No. 15-CV-06055-JCS, 2017 WL 3581136 (N.D. Cal. Aug. 18, 2017) ............28

*Carney v. DOJ*,
19 F.3d 807 (2d Cir. 1994) .......................................................................6

*Chilingirian v. EOUSA*,
71 F.App'x 571 (6th Cir. 2003) ...............................................................6

*CIA v. Sims*,
471 U.S. 159 (1985) ................................................................................18

*Citizens Comm'n on Human Rights v. FDA*,
45 F.3d 1325 (9th Cir. 1995) ...................................................................5

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C.Cir. 1980) .................................................................25

*NRDC v. DOD*,
388 F.Supp.2d 1086 (C.D. Cal.2005) .......................................................2

*Fed. Open Market Comm. v. Merrill*,
443 U.S. 340 (1979) ................................................................................21

*Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*,
524 F.3d 1021 (9th Cir. 2008) ....................................................... 3, 27, 28

*Fox News Network LLC v. U.S. Dep't of Treasury*,
739 F.Supp.2d 515 (S.D.N.Y. 2010) ............................... 11, 12, 20, 21

*Freedom of the Press Found. v. DOJ*,
241 F.Supp.3d 986 (N.D. Cal. 2017) .......................................................18

*Hainey v. U.S. Dep't of the Interior*,
925 F.Supp.2d 34 (D.D.C. 2013) ..............................................................4

*Hall v. CIA*,
  437 F.3d 94 (D.C. Cir. 2006) ...............................................................38

*Hamdan v. DOJ*,
  797 F.3d 759 (9th Cir. 2015) ...................................................... 17, 30

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C.Cir. 2003) ........................................... 6, 9, 10, 11

*Jacobs v. Fed. Bureau of Prisons*,
  725 F.Supp.2d 85 (D.D.C. 2010) .........................................................4

*James Madison Project v. DOJ*,
  302 F.Supp.3d 12 (D.D.C. 2018) .......................................................34

*Jones v. FBI*,
  41 F.3d 238 (6th Cir. 1994) ...............................................................16

*Judicial Watch, Inc., v. DOJ*,
  306 F.Supp.2d 58 (D.D.C. 2004) ........................................... 21, 22, 25

*Kortlander v. BLM*,
  816 F.Supp.2d 1001 (D. Mont. 2011) ................................................16

*Lahr v. Nat'l Transp. Safety Bd.*,
  569 F.3d 964 (9th Cir. 2009) ...................................................... 23, 24

*Lane v. Dep't of Interior*,
  523 F.3d 1128 (9th Cir. 2008) .....................................................5, 17

*Leopold v. DOJ*,
  301 F.Supp.3d 13 (D.D.C. 2018) ................................................ 31, 34

*Lewis v. IRS*,
  823 F.2d 375 (9th Cir. 1987) ...................................................... 33, 34

*Lion Raisins v. U.S. Dep't of Agric.*,
   354 F.3d 1072 (9th Cir. 2004) .................................................................. 16, 33

*Marcusse v. DOJ*,
   959 F.Supp.2d 130 (D.D.C. 2013) ...........................................................31

*Maricopa Audubon Soc. v. U.S. Forest Serv.*,
   108 F.3d 1082 (9th Cir. 1997) .................................................................16

*Maynard v. CIA*,
   986 F.2d 547 (1st Cir. 1993) .....................................................................5

*McAtee v. DHS*,
   2016 WL 3079693 (D. Mont. May 31, 2016) ....................................... 2, 4, 27, 28

*Mead Data Cent., Inc. v. U.S. Air Force*,
   566 F.2d 242 (D.C.Cir. 1977) ............................................................. 21, 25

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ...................................................................3

*Miller v. U.S. Dep't of State*,
   779 F.2d 1378 (8th Cir. 1985) ...................................................................6

*Minier v. CIA*,
   88 F.3d 796 (9th Cir.1996) .................................................................. 2, 18, 31

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
   861 F.2d 1114 (9th Cir. 1988) .................................................................22

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ................................................................................21

*Oglesby v. U.S. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) .....................................................................5

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
    976 F.2d 1429 (D.C.Cir. 1992) ...................................................................... 22, 23

*Pickard v. DOJ*,
    217 F.Supp.3d 1081 (N.D. Cal. 2016) ................................................................36

*Pollack v. BOP*,
    879 F.2d 406 (8th Cir. 1989) .................................................................. 5, 9, 12

*Poulsen v. DOD*,
    2019 WL 1318380 (N.D. Cal. Mar. 22, 2019) ...................................................31

*Rhodes v. FBI*,
    316 F.Supp.3d 173 (D.D.C. 2018) .....................................................................37

*Richardson v. DOJ*,
    730 F.Supp.2d 225 (D.D.C. 2010) .......................................................................4

*Rojas v. Fed. Aviation Admin.*,
    No. CV-15-1709-PHX-SMM, 2017 WL 6886082 (D. Ariz. Sept. 25, 2017) .....28

*Rosenfeld v. DOJ*,
    57 F.3d 803 (9th Cir. 1995) ...............................................................................30

*SafeCard Serv., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) .................................................................. 3, 5, 6

*Schlefer v. United States*,
    702 F.2d 233 (D.C.Cir. 1983) ............................................................................21

*Sellers v. IRS*,
    2009 WL 700647 (D. Or. Mar. 17, 2009) ..........................................................25

*Shapiro v. DOJ*,
    239 F.Supp.3d 100 (D.D.C. 2017) .....................................................................37

*Sussman v. U.S. Marshals Serv.,*
   494 F.3d 1106 (D.C.Cir. 2007) .......................................................27

*U.S. Dep't of State v. Ray,*
   502 U.S. 164 (1991) .............................................................6, 16

*Valencia-Lucena v. U.S. Coast Guard,*
   180 F.3d 321 (D.C.Cir. 1999) .........................................................6

*Vaughn v. Rosen,*
   484 F.2d 820 (D.C. Cir. 1973) ........................................................16

*Watkins v. U.S. Bureau of Customs & Border Prot.,*
   643 F.3d 1189 (9th Cir. 2011) ........................................................20

*Zemansky v. EPA,*
   767 F.2d 569 (9th Cir. 1985) .......................................................5, 12

**Statutes**

5 U.S.C. 552(b)(7)(C) ..................................................................26
5 U.S.C. §552(a)(6)(E) ...................................................................3
5 U.S.C. §552(b) ................................................................... 16, 19
5 U.S.C. §552(b)(7)(A) ........................................................... i, 31, 33
5 U.S.C. § 552(a)(4)(B) ..................................................................2
5 U.S.C. § 552(b)(3)-(6) ...............................................................17
5 U.S.C. § 552(b)(6) ....................................................................26
5 U.S.C. § 552(b)(7)(E) ........................................................... 29, 35

5 U.S.C. § 553(a)(3)(A) ..................................................................3

6 U.S.C. § 121 ...........................................................................18
6 U.S.C. § 121(d)(9) ....................................................................18
6 U.S.C. § 121(d)(11) ............................................................... 18, 19

10 U.S.C. § 275 ..........................................................................7

18 U.S.C. § 1385 .........................................................................7

28 U.S.C. §§533 ....................................................................................33

49 U.S.C. §114(e)(1) .............................................................................14

49 U.S.C. §44901(a) ..............................................................................14

49 U.S.C. §44903(b) ..............................................................................14

50 U.S.C. § 3024(i) .................................................................... 17, 18, 19
PL 115-278 .............................................................................................18

## Regulations

28 C.F.R. §0.85 ......................................................................................33

**INTRODUCTION**

This case concerns a Freedom of Information Act (FOIA) request the Plaintiffs submitted to seven different federal agencies: Army Corps of Engineers (ACE), Bureau of Land Management (BLM), Federal Emergency Management Agency (FEMA), Office of Legal Counsel (OLC), Transportation Security Administration (TSA), Office of Intelligence and Analysis (I&A), and Federal Bureau of Investigation (FBI). Plaintiffs submitted the FOIA requests to the seven agencies in a letter dated January 23, 2018. Plaintiffs sought documents created since January 27, 2017 concerning the agencies' purported plans for dealing with protest activities surrounding the Keystone XL Pipeline project as set forth in the United States' Statement of Undisputed Facts, ¶¶4-5. Plaintiffs filed a complaint on September 4, 2018, approximately seven months after having sent requests to the agencies.

For the reasons set forth below, the federal agencies are entitled to summary judgment. They have disclosed all documents to which Plaintiffs are entitled under FOIA. The agencies' searches were also reasonably calculated to uncover all responsive documents. Redactions and withholdings were warranted and supported under FOIA and, where exemptions applied, information was segregated to provide disclosure.

**STANDARD OF REVIEW**

The FOIA vests jurisdiction in federal district courts to enjoin an agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. § 552(a)(4)(B). The agency decision is reviewed de novo. *Id.*

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *NRDC v. DOD*, 388 F.Supp.2d 1086, 1094 (C.D. Cal.2005). However, because the facts are rarely in dispute in a FOIA case, the court need not ask whether there is a genuine issue of material fact. *Id.*; *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir.1996). Rather, the standard for summary judgment in a FOIA case generally requires a three-stage inquiry:

1) The first step is to determine whether the agency met its burden of showing that it fully discharged its FOIA obligations;

2) The second step is to determine whether the agency met its burden of demonstrating that the undisclosed information falls within one of the nine FOIA exemptions;

3) The final step is to determine whether the agency met its burden of establishing that reasonably segregable portions of a document have been segregated and disclosed.

*McAtee v. DHS*, 2016 WL 3079693, *2 (D. Mont. May 31, 2016).

Thus, summary judgment is appropriate where affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably

-2-

specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

In a FOIA review the court must analyze the question of whether records should be released as if they are to be released to the public at large. *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008).

**ARGUMENT**

**I.     Where production did not occur within FOIA deadlines, the remedy is production, and all agencies have now produced responsive documents.**

In ¶53 of the complaint, Plaintiffs claim the agencies' "failure to promptly make available records sought by the request violates FOIA, 5 U.S.C. § 553(a)(3)(A)." Doc. 1 at 16. Similarly, in ¶55, Plaintiffs claim the agencies' denial of their "request for expedited processing violates FOIA, 5 U.S.C. §552(a)(6)(E)." *Id*. at 17. As an initial matter, Plaintiffs paint with too broad a brush: The agencies did not make their §552(a)(6)(A)(i) determinations simultaneously, and did not produce records in lockstep. Plaintiffs fail to allege or

establish that each agency failed to produce records "promptly" after their
determinations, and fail to account for agencies (TSA, OLC) that found no
responsive documents.

Regardless, each agency has now responded to Plaintiffs' FOIA request.
Most agencies encountered some delay.  But the mere fact of delay does not entitle
Plaintiffs to judgment.  The timing of an agency's release of records does not
determine whether the agency has complied with its FOIA obligations, or entitle a
plaintiff to judgment in its favor.  *Richardson v. DOJ*, 730 F.Supp.2d 225, 231-32
(D.D.C. 2010); *Jacobs v. Fed. Bureau of Prisons*, 725 F.Supp.2d 85, 89 (D.D.C.
2010).  The proper remedy for a delay is not to order the agency to turn over all
requested documents, but to direct the agency to continue to work diligently on
processing the request.  *Hainey v. U.S. Dep't of the Interior*, 925 F.Supp.2d 34, 42
(D.D.C. 2013) ("[W]hether the search was completed before or after the requestor
files a lawsuit, the remedy available to the plaintiff is the same:  access to the
documents to which [s]he is entitled under the law.").  Here all requests have been
processed after supplemental reviews and/or searches by the seven agencies.

"If the agency has completed its review and responded, 'the only issue for
the Court to consider . . . is whether the [agency's] response complies with its
obligations under FOIA.'" *McAtee*, 2016 WL 3079693, *2 (quoting *Hainey*, 925
F.Supp.2d at 42).

## II.   The agencies fully discharged their FOIA obligations by conducting searches reasonably calculated to uncover all relevant documents.

In ¶54 of the complaint, Plaintiffs claim the agencies violated the FOIA by failing to make adequate searches for records responsive to their request.  Doc. 1 at 17.  Contrary to Plaintiffs' claim, the agencies fully discharged their obligations under FOIA.  Each agency conducted a search "reasonably calculated to uncover all relevant documents."  *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985); *Lane v. Dep't of Interior*, 523 F.3d 1128, 1139 (9th Cir. 2008); *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993).

An agency's diligence is measured by a standard of reasonableness.  *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995).  The agency is neither required to search every record system nor to conduct a perfect search.  *SafeCard Serv., Inc.*, 926 F.2d at 1201.  The agency must show merely a good faith effort to search for the requested information using methods reasonably expected to produce it.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

To demonstrate the adequacy of its search, an agency may rely on declarations of responsible agency officials, provided the declarations are "relatively detailed, nonconclusory, and submitted in good faith."  *Pollack v. BOP*, 879 F.2d 406, 409 (8th Cir. 1989).  A declaration that identifies the types of files searched, describes how the search was conducted, and demonstrates that all files

reasonably expected to contain responsive records were searched shows an adequate search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C.Cir. 2003); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C.Cir. 1999). Agency declarations are "entitled to a presumption of good faith." *Chilingirian v. EOUSA*, 71 F.App'x 571, 572 (6th Cir. 2003) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991). Once the agency provides a sufficient declaration, the burden shifts to the plaintiff to rebut the evidence by a showing of bad faith on the part of the agency. *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985). But Plaintiff may not rely on purely speculative claims to rebut the agency's declaration. *Carney v. DOJ*, 19 F.3d 807, 813 (2d Cir. 1994); *SafeCard Serv., Inc.,* 926 F.2d at 1200.

Here, the agencies' declarations establish through detailed, non-conclusory averments that each agency engaged in a "good faith effort to conduct a search for the requested records, using methods that were reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Each agency's search is addressed below.

## A.    Army Corps of Engineers.

ACE engaged in a diligent search for responsive records, as established in the three declarations of Michelle Bartlett. Docs. 21, 30, 36. Bartlett is ACE's FOIA officer, and has experience with FOIA and personal knowledge of ACE

personnel and recordkeeping practices which enables her to attest to the adequacy of the search.  Docs. 21 & 39 ¶¶1-3.  Bartlett describes how ACE referred Plaintiffs' FOIA request to the Chief of Insider Threat Operations, Mr. David R. Paravecchia, to determine who would have responsive information.  *Id.* ¶7. Paravecchia responded it would be either Insider Threat Operations or Civil Works.  *Id.*

By virtue of the Posse Comitatus Act, and other statutory restrictions, ACE cannot exercise law enforcement functions within the United States.  Doc. 36 ¶3, (citing 18 U.S.C. § 1385, 10 U.S.C. § 275).  Thus, ACE lacks a "law enforcement" arm as envisaged in many parts of ACLU's request.  ACE analyzed ACLU's request regarding pipeline protests under the rubric of security issues and threats. This implicated Insider Threat Operations (security of infrastructure [Doc. 36 at ¶2]) and Civil Works (infrastructure management, including pipelines [*Id.*]).  None of ACE's other organizational units (e.g., Contracting, Cost Engineering, Counsel, Emergency Operations, Equal Employment Opportunity, etc.) are responsible for protest-related security issues, so none would receive or possess information responsive to ACLU's FOIA request.  Doc. 36 ¶2.  The Public Affairs Office possessed four documents that were released, but they pertained to regulatory permitting rather than security.  Doc. 30 ¶¶8-9.

Insider Threat Operations is set up so the Chief of the Operational Protection Division (Paravecchia) receives, or is aware of, all information regarding potential security concerns involving ACE infrastructure and improvements. *Id*. Paravecchia – also the records custodian of Insider Threat Operations – knew Insider Threat Operations had not been involved with or received information responsive to ACLU's request, except for certain emails between BLM and ACE, which were produced. *Id*. The record custodian for Civil Works (Deputy for Civil Works Steven Kopecky) searched the sole source of potentially responsive records (email and notes from coordination meetings) using the following terms: Keystone, Security, Law enforcement, and Consultation. *Id*. This search revealed no responsive records. *Id*.

Paravecchia and Kopecky's search results were confirmed by their knowledge that ACE had not engaged in any "legal or policy analysis relating to funding and staffing law enforcement," because of the legal prohibition against ACE engaging in such activity. Doc. 36 ¶3. Also, ACE's mission and authority do not extend to such analyses (they deal with infrastructure and water pollution – not protests). *Id*. ACE possesses no documents pertaining to traveling to meetings or speaking engagements about pipeline protests – or materials distributed at such meetings – because no interagency meetings came to fruition. *Id*. ¶¶4-5.

-8-

Bartlett's declarations constitute a detailed and non-conclusory account of how ACE conducted its search. *Pollack*, 879 F.2d at 409. They show the types of files searched, how the searches occurred, and demonstrate that ACE examined all files reasonably expected to contain responsive documents. *Iturralde*, 315 F.3d at 313. ACE's search passes muster under FOIA.

### B.    Bureau of Land Management

BLM likewise conducted an adequate search reasonably calculated to locate all relevant documents. Per the declaration of BLM Government Information Specialist Sally Sheeks, after receiving Plaintiffs' request on January 23, 2018, BLM routed it to its Montana State Office ("BLM-MT"), the component most likely to have potentially responsive records. Doc. 31 ¶¶3-4. BLM-MT's Branch Chief for Records and Information Services, Tori Thoricht, sent search requests to eight specific custodians based on their roles at BLM-MT. *Id.* ¶¶5, 7 (listing custodians and titles). These custodians were instructed to search all known locations, including electronic and paper files and personal devices. *Id.* ¶6. Each custodian employed search terms that were derived from Plaintiffs' FOIA request, the custodian's knowledge of the subject matter, and the custodian's familiarity with his own recordkeeping in order to identify responsive records. *Id.* ¶¶6-7. These search terms, which were broad and reasonably calculated to detect records related to the Keystone pipeline, returned 167 pages of responsive materials. *Id.*

¶¶7, 9. Based on her own review, Ms. Sheeks has concluded that there are no other locations likely to contain responsive records. *Id.* ¶8. BLM-MT has therefore met its search burden under FOIA.

### C.    Federal Emergency Management Agency

FEMA not only met, but exceeded, its obligations under FOIA, conducting multiple searches for responsive documents that both pre- and post-dated Plaintiffs' request. As detailed in the declaration of Gregory Bridges, Acting Chief of FEMA's Disclosure Branch, FEMA received Plaintiff's request on January 23, 2018. Doc. 33 ¶3. Between January 26 and February 2, 2018, FEMA Region VIII, which encompasses the majority of the proposed route for the Keystone pipeline, searched its email, National Emergency Management Information System, HP Records Manager, and MapInfo systems for anything related to the Keystone pipeline. *Id.* ¶¶4, 6. The search employed terms broader than those Plaintiffs requested in order to uncover all relevant documents. Doc. 33 ¶¶ 6, 9; Doc. 33-4 (list of search terms).

Despite this broad inquiry, the search uncovered no responsive documents. As FEMA advised Plaintiffs, FEMA had not received any request for assistance regarding the Keystone pipeline, and therefore had no relevant documents. Doc. 33 ¶5; Doc. 33-3. After Plaintiffs appealed FEMA's initial response, FEMA Region VIII conducted a second search between July 10 and 12, 2018, but again

found no responsive records.  Doc. 33 ¶6.  FEMA subsequently received documents regarding the Keystone pipeline on July 14, 2018.  *Id.* ¶7.  Even though most were not responsive to Plaintiffs' request, FEMA produced the documents to Plaintiffs anyway.  *Id.*  Finally, after this lawsuit was filed, FEMA Region VIII performed a third search and produced a set of documents to Plaintiffs, many of which were related to the Keystone pipeline but fell outside the scope of Plaintiffs' request.  *Id.* ¶8.

FEMA's multiple searches demonstrate the agency's good faith and diligence in its efforts to uncover responsive documents.  *Id.* ¶9.  Indeed, FEMA was not legally required to perform the second or third searches, or to produce any documents that post-dated Plaintiffs' request.  *Fox News Network LLC v. U.S. Dep't of Treasury*, 739 F.Supp.2d 515, 536 (S.D.N.Y. 2010).  FEMA's decision to search for all records related to the pipeline, and not just those directly responsive to Plaintiffs' request, similarly shows the searches were reasonably calculated to uncover all relevant documents. Doc. 33 ¶9. FEMA has accordingly met its search obligations under FOIA.

### D.    Office of Legal Counsel

Paul P. Colborn is Special Counsel for OLC and thirty-plus year supervisor of OLC FOIA responses.  Doc. 37 ¶1.  His declaration describes how OLC stores records in paper and electronic format, including a central storage system and the

computer files of individual employees.  *Id*. ¶6.  Colborn further establishes how the agency set up an over-inclusive search of the relevant databases using the terms "keystone" and "pipeline" and "protest*[1]" together with a Boolean tandem of "law enforce* w/10 [within ten words of] cooperat*."  *Id*. ¶¶6-7.  OLC engaged in "Perceptive" keyword searches to cast an even broader net.  *Id*.

OLC searched all locations likely to contain responsive records, as determined by a consensus of senior officials and subject matter experts most qualified to make such determinations.  *Id*. ¶9.  Despite the fact that all such locations were searched using the above-described over-inclusive search terms, OLC's searches revealed no responsive records.  *Id*. ¶¶8-9.  As shown by Colborn's "relatively detailed, nonconclusory," and "good faith" declaration, (*Pollack*, 879 F.2d at 409), OLC engaged in a good faith search for the ACLU's requested information using methods which would be reasonably expected to produce it.  *Oglesby*, 920 F.2d at 68.  FOIA requires no more.

### E.    Transportation Security Administration

As outlined in the declaration of Teri Miller (Doc. 34), TSA conducted a thorough search "reasonably calculated to uncover all relevant documents." *Zemansky*, 767 F.2d at 571.  Ms. Miller is the TSA officer responsible for

---

[1] The asterisk denotes a root expander, such that "protest*" would capture documents containing any permutation of that base word, e.g., "protests" or "protestor" or "protesting," etc. *Id*. ¶6.

overseeing the processing all FOIA requests.  Doc. 34 ¶1.  She describes how

TSA's FOIA Branch received Plaintiffs' FOIA request on March 12, 2018.  *Id*. ¶5.

Given the terms of the request (seeking information about contacts between law

enforcement entities pertaining to Keystone XL protests), the FOIA Branch

referred the inquiry to TSA's Law Enforcement / Federal Air Marshal Service.  *Id*.

¶ 5.  The referral described ACLU's information request as follows:

> The [ACLU] requests records pertaining to cooperation between federal,
> state, and local law enforcement entities and between federal law
> enforcement entities and private security companies around preparations for
> anticipated protests against the Keystone XL pipeline.

*Id*.  The referral specified the following search terms: "cooperation between

federal, state, and local law enforcement entities."  *Id*.

Law Enforcement searched databases "that are the principal repositories of

investigative or other information regarding travelers, including information about

additional TSA or DHS scrutiny."  *Id*.  They searched a database known as the

"Information Coordination Section Case Management System," which includes

law enforcement activity reports, advisories, after-action reports, lookouts, and

documents from other agencies.  *Id*.  No responsive records were located.  *Id*.

On January 12, 2019, TSA's FOIA Branch asked Law Enforcement to

conduct another search, this time using the following terms in a Boolean search

within 100 words: Keystone and (pipeline or 'oil pipeline')  and protest.  *Id*. ¶6.

Law Enforcement ran this search in the Information Coordination Section, Special Mission Coverage, and the Special Event Assessment Rating System, where records of this type would be stored, if they existed. *Id*. The particular Law Enforcement divisions within TSA that would handle coordinating or preparing for protests (the Director's Office, the Field Operations Division, and the Flight Operations Division) searched up to four times each. *Id*. Again, no responsive records were found.

TSA's searches were clearly "reasonably calculated to uncover all relevant documents." In fact, the searches were extensive and exhaustive. The fact that the searches turned up no responsive records comes as no surprise because oil pipelines are outside TSA's métier. *Id*. ¶7. TSA was founded in the wake of the September 11, 2001 terrorist attacks "with the goal of preventing further terrorist attacks against the aviation industry, as well as all other modes of transportation." *Id*. TSA jobs include protecting "passengers and property on an aircraft operating in air transportation," to prevent "criminal violence" on aircraft, and to prevent aircraft piracy. *Id*. (citing 49 U.S.C. §44903(b)). They are "responsible for day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation…." *Id*. (citing 49 U.S.C. §114(e)(1) and 49 U.S.C. §44901(a)). They are *not* involved in pipeline security or issues pertaining to pipeline protests. *Id*.

-14-

TSA fully discharged its duty under FOIA by conducting a thorough search of all databases where the requested information would be found if it existed. The lack of information responsive to Plaintiffs' request reflects TSA's lack of involvement in anything pertaining to Keystone XL protests.

## F.     Office of Intelligence and Analysis

As detailed in the declaration of Brendan Henry, I&A's Acting Chief of the Privacy and Intelligence Oversight Branch, I&A performed multiple searches to identify and disclose documents responsive to Plaintiffs' request. After Plaintiffs submitted their initial request on January 23, 2018, I&A acknowledged receipt and worked with Plaintiffs throughout February and March 2018 to clarify the scope of the request. Doc. 39 ¶¶10-15. After Plaintiffs filed this suit, I&A conducted additional searches of its records and made two additional rounds of production. *Id.* ¶19. To conduct these searches, I&A identified all potential personnel within various operational offices and its Field Operations Division who worked on counterterrorism issues or the subject matter of Plaintiffs' request and who were reasonably likely to hold responsive records. *Id.* On I&A's behalf, the Department of Homeland Security (DHS) Office of the Chief Information Officer also conducted an automated search of the email accounts of senior I&A officials. *Id.* When conducting these searches, I&A employed broad search terms, including the search terms "pipeline" and "pipe line," in order to obtain a broad range of

-15-

potentially responsive records.  *Id.* Given the thoroughness and breadth of the

multiple searches I&A conducted, the agency adequately discharged its obligations

under FOIA.

### III.   Summary judgment is appropriate because all documents withheld properly fall within the FOIA exemptions.

Information may be withheld under FOIA if that information falls within one

of the nine enumerated exceptions.  *See* 5 U.S.C. §552(b); *Maricopa Audubon Soc.*

*v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997).  The agency bears the

burden to demonstrate records fall within an exemption.  *Lion Raisins v. U.S. Dep't*

*of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004), overruled on other grounds.

In order to meet their burden, the agency may prepare a *Vaughn* index.  The

*Vaughn* index must provide sufficient detail to demonstrate the applicability of the

exemption, thereby obviating the need for *in camera* inspection of withheld

documents.  *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973).  No precise

form for a *Vaughn* index is required, so long as the reviewing court can "make a

reasoned, independent assessment of the claim[s] of exemption."  *Kortlander v.*

*BLM*, 816 F.Supp.2d 1001, 1009 (D. Mont. 2011).  Courts can rely on *Vaughn*

affidavits to help detail withheld material without disclosing exempted

information.  *Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994), (citing *Ray*, 502 U.S.

at 179).  Agency actions and affidavits are entitled to a presumption of good faith.

*Id*.  A court may rely solely on government affidavits and the *Vaughn* index so

long as the affiants are knowledgeable and the affidavits and index are detailed

enough to allow the court to make an independent assessment. *Lane*, 523 F.3d at

1135-36.

Here, each agency submitted a detailed declaration and Vaughn index

supporting FOIA exemptions asserted under 5 U.S.C. § 552(b)(3)-(6), (7)(C), and

(7)(E), as addressed below.

### A.       Exemption § 552(b)(3)(A).

Exemption 3 applies to materials that are

> specifically exempted from disclosure by statute if that statute requires
> that the matters be withheld from the public in such a manner as to leave
> no discretion on the issue or establishes particular criteria for
> withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3)(A)(i)-(ii).  When considering a claim under Exemption 3, a

court asks "first whether the statute identified by the agency is a statute of

exemption within the meaning of Exemption 3, and then whether the withheld

records satisfy the criteria of the exemption statute." *Hamdan v. DOJ*, 797 F.3d

759, 776 (9th Cir. 2015). "[T]here is no judicial balancing in the application of

Exemption (b)(3); as long as the information withheld is within the scope of the

statute, invocation of the exemption is proper." *Broemer v. FBI*, No. CV 08-

05515, 2011 WL 13142587, at *11 (C.D. Cal. Apr. 22, 2011).

Here, I&A withheld information pursuant to the National Security Act (50

U.S.C. § 3024(i)), and the Homeland Security Act (6 U.S.C. § 121(d)(11)).  It is

-17-

well-settled that 50 U.S.C. § 3024(i) is an Exemption 3 withholding statute, as it

charges the Director of National Intelligence with "protect[ing] intelligence

sources and methods from unauthorized disclosure." *See CIA v. Sims*, 471 U.S.

159, 167-68 (1985) (holding precursor to § 3024 to be exempting statute); *Minier*

*v. CIA*, 88 F.3d at 801 (same); *Freedom of the Press Found. v. DOJ*, 241

F.Supp.3d 986, 999 (N.D. Cal. 2017) (recognizing §3024 as exemption statute). 6

U.S.C. § 121 is also a withholding statute under Exemption 3.   In language very

similar to the National Security Act, it empowers the Secretary of Homeland

Security to:

> ensure that (A) any material received pursuant to this chapter is
> protected from unauthorized disclosure and handled and used only for
> the performance of official duties; and, (B) any intelligence information
> under this chapter is shared, retained, and disseminated consistent with
> the authority of the Director of National Intelligence to protect
> intelligence sources and methods under the National Security Act of
> 1947 and related procedures . . . .

6 U.S.C. § 121(d)(9)[2]; s*ee Brennan Ctr. for Justice at New York Univ. Sch. of Law*

*v. DHS*, 331 F.Supp.3d 74, 88 (S.D.N.Y. 2018).

The information I&A withheld here falls within the protective ambit of both

statutes.  *See* USA_DHS-I&A_000140, 151-62, 164-191, 193-212, 217, 219-22,

---

[2] In its June 25, 2018 final response to Plaintiffs, I&A specifically cited 6 U.S.C.
§ 121(d)(11) as the exempting statute.  The numbering in this subsection of the
statute was subsequently changed, and the proper subsection is (d)(9). *See* PL 115-
278, November 16, 2018, 132 Stat 4168.

225-37, 261, 279-83, 285-86, 288-302, 304-12, 330, 333-421, 440-49, 451, 453-57.

As I&A declarant Henry explains, the withheld information is "intelligence

information that I&A acquired, developed, and used consistent with its authorities

under the Homeland Security Act, as contemplated by 6 U.S.C. § 121(d)(11), and

as a member of the Intelligence Community, as contemplated by 50 U.S.C. §

3024(i)."  Doc. 39 ¶28; *see also* Exec. Order 12,333 (charging heads of intelligence

agencies to protect intelligence sources and methods from disclosure).  This

includes information about intelligence sources, intelligence gathering methods,

intelligence vulnerabilities and gaps, recommendations about mitigation strategies,

and other information that would (if disclosed) reveal information about I&A's

sources and methods and allow violent extremists and others to evade detection

and undermine intelligence activities.  *Id.* ¶¶28-29; doc. 39-5 at 1-12.  Because

disclosure would reveal intelligence sources and methods in violation of both

statutes, I&A has properly withheld information pursuant to Exemption 3.

### B.    Exemption §552(b)(4).

Exemption 4 protects against disclosure of "trade secrets and commercial or

financial information obtained from a person and privileged and confidential." 5

U.S.C. § 552(b).  To invoke Exemption 4, an agency must demonstrate that the

information it seeks to protect is (1) commercial and/or financial information, (2)

obtained from a person or by the government, (3) that is privileged or confidential.

-19-

*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011). A commercial or financial matter is "confidential" if disclosure will likely either "(1) impair the Government's ability to obtain necessary information in the future; or (2) [. . .] cause substantial harm to the competitive position of the person from whom the information was obtained." *Id.* The government need not show that disclosure would cause "actual competitive harm," only that there is "(1) actual competition in the relevant market, and (2) a likelihood of substantial competitive injury if the information were released." *Id.*

Here, Exemption 4 prevents BLM from disclosing emails from a private entity that contain file sharing links, login information, and a passcode. *See* USA_BLM_00017-4, 17-10, 17-13, 39, 40, 97-98. This information is commercial and, as noted in BLM's Vaughn Index, was provided by the private entity. Doc. 31-1 at 1. This information is also confidential because, if BLM were to disclose such information, companies would likely hesitate to send sensitive documents to the agency in the future, thereby hampering BLM's ability to work with private companies. *See, e.g.*, *Fox News Network, LLC*, 739 F.Supp.2d at 565 (upholding refusal to disclose companies' bank information because Treasury needed to ensure it was able to have effective working relationships with banks and other entities). Furthermore, these documents could harm the private company's

-20-

competitive position in comparison to other companies who provide security to oil

and gas pipelines.  *Id*.  Thus, BLM properly invoked Exemption 4.

C.     **Exemption §552(b)(5).**

Exemption §552(b)(5) applies

> to inter-agency or intra-agency memorandums or letters that would not
> be available by law to a party other than an agency in litigation with the
> agency, provided that the deliberative process privilege shall not apply
> to records created 25 years or more before the date on which the records
> were requested.

Exemption 5 encompasses protections traditionally afforded certain documents

under evidentiary privileges in the civil context.  *Schlefer v. United States*, 702

F.2d 233, 237 (D.C.Cir. 1983).  Thus, exemption 5 generally protects from

disclosure deliberative process, attorney-client, and attorney work product.  *Fed.*

*Open Market Comm. v. Merrill*, 443 U.S. 340, 353 (1979); *Mead Data Cent., Inc.*

*v. U.S. Air Force*, 566 F.2d 242, 252-55 (D.C.Cir. 1977); *NLRB v. Sears, Roebuck*

*& Co.*, 421 U.S. 132, 154 (1975).

<u>Deliberative Process</u>

The deliberative process exemption protects inter or intra-agency documents

that convey "recommendations, draft documents, proposals, suggestions, and other

subjective documents which reflect the personal opinions of the writer rather than

the policy of the agency." *Judicial Watch, Inc., v. DOJ,* 306 F.Supp.2d 58, 69

(D.D.C. 2004); *Assembly of the State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).

To qualify for deliberative process protection, records must be predecisional and deliberative. *Nat'l Wildlife Fed'n v. U.S. Forest Serv*., 861 F.2d 1114, 1117 (9th Cir. 1988); *Judicial Watch, Inc*., 306 F.Supp.2d at 69. A document is predecisional if "prepared in order to assist an agency decisionmaker in arriving at his decision, rather than support a decision already made…. Material is deliberative if it reflects the give-and-take of the consultative process." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C.Cir. 1992) (citations and internal quotation omitted). Recent decisions tend to focus and extend the privilege to documents, the disclosure of which would discourage candid discussion within the agency. *Id*. Draft documents subject to revision or containing proposed changes fall well within the deliberative process privilege. *Nat'l Wildlife Federation*, 861 F.2d at 1120-21.

BLM properly invoked the deliberative process privilege as to redactions in internal emails and documents that address the development of a communications plan. *See* USA_BLM_42-43. In addition to containing government employees' input and thoughts regarding the communications plan's development, these inter-agency documents contain law enforcement officers' planning, speculation, and concerns related to the pipeline. Doc. 31, ¶13; Doc. 31-1 at 1-2. Because the

documents were created to assist the agency decision maker in developing a plan for community engagement, they are predecisional. *Petroleum Info. Corp.*, 976 F.2d at 1434. They are also deliberative because they reflect comments and input from various employees regarding the communications plan. *Id.* Releasing such documents would only discourage candid discussions within the agency and stymy BLM in the execution of its duties, and thus they are properly withheld under Exemption 5. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 983 (9th Cir. 2009) (withholding draft document containing analysts' thought processes and recommendations).[3]

The same analysis applies to ACE's Exemption 5 redactions. USA_ACE_00065. As noted in ACE's Vaughn index, the redacted material "contains author's characterization of editorial remarks" that pertained to a "possible course of action" that was predecisional. Because the redacted information reflects predecisional employee input that was subject to revision, it was properly excluded under Exemption 5.

---

[3] BLM likewise asserts that certain conference call numbers and passcodes, IT administrative passcodes, and accounting numbers are confidential information shielded under the deliberative process and attorney-client privileges because they facilitated privileged communications. Doc. 31-1, at 1-3. Furthermore, Plaintiffs have no interest in this information and would gain nothing from its disclosure.

I&A also properly withheld various intelligence documents and other information pursuant to the deliberative process privilege. As detailed in the Henry declaration, the information withheld under this privilege includes "draft analytic products, information relating to intra-agency pre-decisional deliberations, discussions in preparation for inter-agency deliberations, including preliminary evaluations and recommendations of I&A and DHS personnel, and attorney-client communications intended to inform the decision-making process." Doc. 39 ¶32; *see* USA_DHS-I&A_000151-161, 161-162, 164-176, 177-191, 193-212, 217, 219-222, 225-237, 333-421.

This information is deliberative because it consists of internal comments, annotations, and solicitations for partner agency feedback. *Id.* ¶¶35-38; doc. 39-5 at 2-4, 6, 7, 8. It is also pre-decisional because it was created to develop an agency position and make recommendations to decision-makers. *Id.* Disclosing this information would expose I&A's preliminary assessments and deliberations, reveal the deliberative steps that I&A personnel take to assess raw intelligence material, chill candid advice that intelligence analysts and officials provide to each other, chill I&A interactions with partner agencies when developing intelligence positions, and hamper I&A's efforts to develop intelligence analysis and evaluations. Doc. 39 ¶38. I&A therefore properly withheld this information under Exemption 5.

-24-

Attorney-Client & Work Product.

Exemption 5 also exempts information subject to the attorney-client and attorney work product privileges. The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data*, 566 F.2d at 252. "Uninhibited confidence in the inviolability of the [attorney client] relationship is viewed as essential to the protection of a client's legal rights, and to the proper functioning of the adversary process." *Judicial Watch, Inc*., 306 F.Supp.2d at 73 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 *(*D.C.Cir. 1980). Thus, Exemption 5 protects written documents or memorandums containing legal advice, as well as attorney-client communications. This also includes e-mail exchanges amongst clients and attorneys or amongst government attorneys. *Judicial Watch, Inc*., 306 F.Supp.2d at 73-74.

As identified in its *Vaughn* Index, BLM withheld certain attorney-client privileged communications between BLM and the Office of the Solicitor. USA_BLM_00017-2. BLM also redacted emails containing communications received from the U.S. Attorney's Office. USA_BLM_00057-58; Doc. 31 ¶13. This withheld information constitutes confidential legal advice provided to the agency from its counsel and is therefore properly withheld under Exemption 5. *Sellers v. IRS*, 2009 WL 700647, at *13 (D. Or. Mar. 17, 2009).

I&A also properly withheld communications between DHS attorneys and I&A personnel (*see* USA_DHS-I&A_000161-162, 000164-176) because they contain "legal advice sought during the deliberative process to inform final agency positions, including the production of analytic intelligence." Doc. 39 ¶39; doc. 39-5 at 4. As explained in the agency's Vaughn Index, these documents contain legal opinions and legal advice from agency counsel to decision makers intended to be confidential. *Id*. at 4-5 ("release of this information could chill the ability of I&A personnel to seek and receive necessary legal counsel…."). Thus, these communications were properly redacted under Exemption 5.

## D. Exemptions §552(b)(6) and (b)(7)(C).

The agencies have also asserted Exemptions (b)(6) and (b)(7)(C) as a basis for withholding information. Exemption 6 allows for withholding of information in "personnel and medical files and <u>similar files</u> the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (emphasis added). Exemption 7(C) allows for withholding "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(7)(C). Courts addressing Exemption 7(C) have found that the stigma of being associated with a law enforcement investigation, the potential for harassment

and potential to prejudice law enforcement personnel in carrying out law

enforcement functions, generally outweighs the public interest in disclosure.

*Sussman v. U.S. Marshals Serv.,*, 494 F.3d 1106, 1115 (D.C.Cir. 2007).

This Court analyzed Exemptions 6 and 7(C) as follows:

> Both exemptions protect the names and identifying information of
> government employees as well as private third parties whose identities are
> revealed in government and law enforcement records. *Bangoura v. U.S.
> Dep't of Army*, 607 F.Supp.2d 134, 147 (D.D.C. 2009). Both exemptions
> balance individuals' privacy interests in protecting information from
> disclosure against the public interest in disclosure. *Forest Serv. Emps. for
> Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 n.2 (9th Cir. 2008).
> Exemption 7(C) is "more protective of privacy" than Exemption 6 when it
> comes to balancing the "magnitude of the public interest" required to
> override the respective privacy interests. *Id.*

*McAtee*, 2016 WL 3079693 at *4.

Following a line-by-line review of its responsive records, FEMA redacted

the personal information, including names, emails, and phone numbers of state

employees and other individuals pursuant to Exemption 6. Doc. 33 ¶¶10-11; *see*

USA_FEMA_00083, 85-86, 88-97, 102, 105, 135-36, 164-67, 169-76, 178-81,

183-86, 191-94, 196-203, 205-07, 219-223, 228, 259-60, 292-311, 315-17, 320-26,

365-78, 380-383, 386-90, 392, 432-34, 437-43, 451, and 496. As detailed in the

Bridges declaration, some of this information could reveal state and local

employees' salaries or personal contact information, and many of the redacted

individuals were only copied on emails without participating substantively in the

-27-

disclosed conversations. *Id.* ¶11. These individuals have a substantial interest in keeping their personal information private, and revealing the same would subject them to unwanted public scrutiny without revealing anything about FEMA operations. *Id.* ¶11; *Rojas v. Fed. Aviation Admin.*, No. CV-15-1709-PHX-SMM, 2017 WL 6886082, at *10 (D. Ariz. Sept. 25, 2017) (holding Exemption 6 applies to private email addresses because disclosure would not serve purpose of FOIA); *Carlson v. United States Postal Serv.*, No. 15-CV-06055-JCS, 2017 WL 3581136, at *32 (N.D. Cal. Aug. 18, 2017) (upholding redaction of government employees' names and email addresses under Exemption 6). Accordingly, FEMA properly withheld information pursuant to Exemption 6.

BLM similarly redacted the names and contact information for "law enforcement personnel involved in the Keystone XL Pipeline project" and the names of individuals for whom it was unable to determine their affiliation. *See* USA_BLM_00027-30, 39, 52-53, 55-59, 61-107, 130-132, 135-147, 152, 160-67. Per BLM's *Vaughn* index, these documents are primarily emails and documents related to training and preparations for possible protests or security efforts. Doc. 31-1. They were therefore created for law enforcement purposes, and disclosing the redacted information would constitute an invasion of privacy and expose law enforcement personnel to harassment and annoyance in their private lives, while revealing nothing pertinent to the public interest. *FSEEE*, 524 F.3d at 1027

(observing the "only relevant public interest" in a FOIA case is the extent to which information would "shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."). This information is therefore properly withheld pursuant to Exemptions 6 and 7(C). Doc. 31 ¶15.

I&A also redacted I&A personnel names, phone numbers, email addresses, and other identifying information from certain records. USA_DHS-I&A_000129, 130, 150, 161, 164-71, 184-86, 192, 213-15, 239, 250-74, 276-77, 284, 287, 292, 294, 297, 301, 305, 308, 310, 312-19, 321-22, 324, 326, 328, 330, 332, 333-421, 422-30, 432, 434-35, 437-39. As explained in the Henry Declaration (Doc. 39 ¶¶44-46), this information could compromise the privacy and safety of officials with intelligence and homeland security responsibilities if disclosed, while advancing no legitimate FOIA purposes or public interest. The information is therefore properly withheld pursuant to Exemption 6.

### E.    Exemption §552(b)(7)(E).

Exemption 7(E) exempts information compiled for law enforcement purposes that "would disclose the techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The Ninth Circuit has held this provision "only exempts investigative techniques not generally known to

the public." *Rosenfeld v. DOJ*, 57 F.3d 803, 815 (9th Cir. 1995).  The Court

subsequently clarified that, where a technique sought to be withheld revealed

information about "a specific *means* of conducting" an investigation, it could

properly be withheld under Exemption 7(E).  *Hamdan*, 797 F.3d at 777-78.

Agency affidavits are sufficient to establish the exemption.  *Id.* at 778.  The agency

need not affirmatively demonstrate that disclosure *would* lead to a danger of future

lawbreaking.  *Id.*

     I&A redacted information pursuant to Exemption 7(E).  USA_DHS-

I&A_00045-57, 59-63, 109-127, 130-142, 144-148, 155, 217, 219-22, 225-26, 296,

300-01, 423, 442-47, 451.  These redactions protected information "that reveals

law enforcement methods and activities to counter homeland security threats, as

well as related records."  Doc. 39 ¶¶47-48.  The redactions include compilations of

information developed by federal and non-federal agencies for their law

enforcement purpose of protecting homeland security, which were subsequently

obtained by I&A during intelligence collection. Further, these documents contain

techniques, procedures, and guidelines for the intelligence and law enforcement

detection of nefarious actors and their potential targets.  *Id.* ¶48; doc. 39-5 at 1, 9.

If disclosed, targets of terrorist investigations could use this information to evade

detection and frustrate the investigations of I&A and its partner agencies.  Doc. 39

¶48.  Accordingly, this information was properly withheld under Exemption 7(E).

*Marcusse v. DOJ*, 959 F.Supp.2d 130,145-46 (D.D.C. 2013).

## IV.   The FBI properly asserted a *Glomar* response under 5 U.S.C. §552(b)(7)(A) & (E).

A *Glomar* response is a "refus[al] to confirm or deny the existence of certain

records" on the grounds that a FOIA exemption precludes disclosure of such

information.  *See Minier*, 88 F.3d at 800; *see also ACLU v. CIA*, 710 F.3d 422, 426

(D.C. Cir. 2013). Courts apply the same general exemption review standards from

non-*Glomar* cases to determine whether a *Glomar* response fits within a claimed

exemption.  *Leopold v. DOJ*, 301 F.Supp.3d 13, 28 (D.D.C. 2018). An agency

therefore meets its burden of proving a claimed exemption applies by submitting a

detailed affidavit, as in non-*Glomar* cases. *Minier*, 88 F.3d at 800. "There is no

duty on an agency to 'search' for records about which it properly asserts a *Glomar*

response." *Poulsen v. DOD*, 2019 WL 1318380, at *21 (N.D. Cal. Mar. 22, 2019).

The FBI asserted in a January 9, 2019 response to Plaintiffs that it could not

confirm or deny the "existence of records disclosing its strategy, coordination, or

resources that are or are not available to thwart criminal activity related to future

protests against the Keystone XL pipeline."  Doc. 32-5.  The FBI maintained this

information was exempt from disclosure under FOIA Exemptions 7(A) and 7(E).

In support of its response, the FBI has submitted the detailed declaration of David

M. Hardy, Section Chief of the FBI's Information Management Division

Record/Information Dissemination Section.  Doc. 32.

The FBI's *Glomar* Response is appropriate under Exemptions 7(A) and (E)

because, as set forth in greater detail below, (A) responsive records, if they exist,

would be compiled for law enforcement purposes, and disclosing the

existence/non-existence of these records would (B) interfere with FBI enforcement

proceedings and/or (C) compromise the FBI's little-known investigative

techniques and procedures related to the pipeline, undermining their efficacy.

### A.    If they exist, records responsive to Plaintiffs' request would be "compiled for law enforcement purposes."

To show records were compiled for law enforcement purposes, an agency

with "a clear law enforcement mandate, such as the FBI" need only establish a

rational nexus between (1) enforcement of a federal law or the FBI's law

enforcement duties and (2) the document for which an exemption is claimed.

*ACLU v. FBI*, 881 F.3d 776, 778 (9th Cir. 2018) (citations omitted). "[L]aw

enforcement agencies such as the FBI should be accorded special deference in an

Exemption 7 determination." *Id.* at 779 (quotation omitted).

Plaintiffs seek records of law enforcement preparations related to possible

pipeline protests.  Records pertaining to the FBI's receipt, evaluation, and activity

in response to threats to the pipeline or protests would be part of an FBI

investigation, and therefore compiled for law enforcement purposes. Doc. 32 ¶15.

Such records would necessarily be compiled in furtherance of the FBI's law

enforcement mandate. 28 U.S.C. §§533, 534; 28 C.F.R. §0.85 (collectively setting

forth the FBI's law enforcement duties and authority). Responsive records, if they

exist, would therefore be compiled for law enforcement purposes.

**B.    The requested information is properly withheld under Exemption 7(A) because disclosure would interfere with FBI enforcement proceedings.**

Pursuant to Exemption 7(A), a government agency may withhold "records or

information compiled for law enforcement purposes" if releasing them could

"reasonably be expected to interfere with enforcement proceedings."  5 U.S.C.

§ 552(b)(7)(A). To avail itself of this exemption, a law enforcement agency must

therefore show that (1) the records were compiled for law enforcement purposes

and (2) disclosure would interfere with pending enforcement proceedings. *Lion*

*Raisins*, 354 F.3d at 1082.  The government need not show that disclosure would

affect a particular enforcement proceeding, only that disclosure would generally

interfere with enforcement proceedings.  *Lewis v. IRS*, 823 F.2d 375, 380 (9th Cir.

1987).

The FBI is undisputedly a law enforcement agency, and, as shown above,

the documents Plaintiffs request would be compiled for law enforcement purposes.

The FBI therefore properly refused to confirm or deny the existence of responsive

records under Exemption 7(A) because doing so would reveal FBI capabilities and

vulnerabilities to address threats and undermine its enforcement efforts related to the pipeline.  Doc. 32 ¶¶18-21. As Hardy explains, acknowledging the existence/non-existence of responsive records would not only "confirm[] or deny[] the specific triggers" for detecting threats to the pipeline, but would also disclose the FBI's actions and resources to thwart such threats. *Id.* ¶¶18-21.  Because the FBI has not publicly disclosed any details regarding the assessment or existence of new threats against the pipeline, criminals could use information in such a disclosure to alter their behavior and undermine any present criminal investigations. Doc. 32 ¶¶19-20.

Given the interference this would create for FBI enforcement proceedings, the FBI's *Glomar* response under Exemption 7(A) was proper.  *James Madison Project v. DOJ*, 302 F.Supp.3d 12, 30-31 (D.D.C. 2018) (sustaining FBI *Glomar* because confirming or denying existence of records would hamper any potential investigation); *BuzzFeed, Inc. v. DOJ*, 344 F.Supp.3d 396, 404-05 (D.D.C. 2018) (same); *Leopold*, 301 F.Supp.3d at 27-28 (upholding *Glomar* because acknowledging existence/non-existence of an investigation would tip off persons of investigative interest).

-34-

**C.    The requested information is properly withheld under Exemption 7(E) because disclosure would reveal previously unknown investigative techniques, nullifying their effectiveness.**

Pursuant to Exemption 7(E), a government agency may withhold "records or information compiled for law enforcement purposes" if releasing them would

> disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law ….

5 U.S.C. §552(b)(7)(E). An agency must show that a technique is not well-known to the public; however, it is not required to disclose all details concerning a technique simply because some aspect of it is publicly known. *Bishop v. Dep't of Homeland Sec.*, 45 F.Supp.3d 380, 391 (S.D.N.Y. 2014) (collecting cases). "[E]ven commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness."   *ACLU v. United States Dep't of Homeland Sec. Office for Civil Rights & Civil Liberties,* 2017 WL 3478658, at *11 (D. Ariz. Aug. 14, 2017).  The government need only show disclosure "could reasonably be expected to risk circumvention of the law" for guidelines, not techniques and procedures. *ACLU v. DOJ*, 880 F.3d 473, 491 (9th Cir. 2018).

Here, the FBI properly refused to confirm or deny that records exist under Exemption 7(E) because doing so would disclose techniques and procedures that are not well-known to the public.  The FBI has not disclosed details concerning

any threats or its assessment of threats against the Keystone pipeline. Doc. 32

¶¶19-20.  While the public may know that the FBI has investigated prior threats to

the pipeline (*Id*. ¶19), the FBI's current techniques and procedures related to the

pipeline are not known to the public, and are therefore exempt from disclosure. *See*

*Pickard v. DOJ*, 217 F.Supp.3d 1081, 1096-97 (N.D. Cal. 2016) (upholding

*Glomar* under Exemption 7(E) because procedures for using NADDIS numbers to

identify drug violators were not generally known to the public).

Even assuming the FBI's techniques and procedures were known to the

public, acknowledging or denying the existence of responsive records would

nullify their effectiveness. As detailed in Hardy's declaration, each part of

Plaintiffs' request seeks information about techniques and procedures that, if

disclosed, would enable criminals to thwart the FBI's enforcement efforts:

1. Disclosing legal and policy analyses or recommendations requested in Part 1 would reveal the FBI's detection, analysis, and response to perceived threats as well as its capabilities, vulnerabilities, and available resources to thwart such threats.  *Id*. ¶25.

2. Disclosing the travel of FBI employees requested in Part 2 would reveal the FBI's "capabilities, vulnerabilities, and level of resources" in specific locations and "divulge the level of focus, priority, and success of the FBI in obtaining cooperation of others to detect and thwart" threats. *Id.* ¶26.

3. Disclosing meeting agendas, pamphlets, and other distributed matter requested in Part 3 would reveal the FBI's "strategic objectives and analysis of threats, methods for combating threats, potential needs or shortfalls of the FBI, and current capabilities and/or vulnerabilities."  *Id.* ¶27.

4. Disclosing communications requested in Part 4 would reveal the FBI's "playbook" for detecting and combatting threats against the pipeline, permitting criminals to learn the FBI's "plans, resources, and ability to detect criminal acts against the pipeline" and develop "countermeasures to avoid detection and circumvent the law." *Id.* ¶28.

Hardy further explains that disclosing the existence/non-existence of records responsive to Plaintiffs' request as a whole would reveal whether the FBI has detected criminal activities; whether plans/capabilities exist to address those activities; whether cooperation is available; and whether the FBI has developed any strategies. *Id*. ¶¶29-30. With this information, criminals could gain an understanding of the FBI's playbook and use that knowledge to circumvent the FBI's law enforcement efforts. *Id.* Accordingly, because disclosure would compromise the FBI's investigative techniques related to the pipeline, the FBI's *Glomar* response under Exemption 7(E) was proper. *Rhodes v. FBI*, 316 F.Supp.3d 173, 177-78 (D.D.C. 2018) (sustaining FBI's *Glomar* under Exemption 7(E) because any response would compromise investigative operations); *BuzzFeed, Inc.*, 344 F.Supp.3d at 406-07 (same); *Shapiro v. DOJ*, 239 F.Supp.3d 100, 114-15 (D.D.C. 2017) (upholding FBI's "no response" under Exemption 7(E) because the requested information was part of a "mosaic" that, if revealed, would risk circumvention of the law).

## V.    Fee waivers are moot.

In paragraph 56 of the complaint, Plaintiffs claim the agencies' "denials of Plaintiffs' requests for fee waiver violate FOIA, 5 U.S.C. §552(a)(4)(A)(iii), and Defendants' corresponding regulations."  Doc. 1 at 17.  As set forth in the agencies' declarations, however, no producing agency has charged ACLU for the production of any documents.  *See* United States' Statement of Undisputed Facts, ¶7.  Where an agency releases documents to a requestor without seeking payment, the agency moots any argument from the requestor that the denial of a fee waiver was substantively incorrect.  *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006).

Because the agencies have already released the documents without charging a fee, ACLU has already obtained everything that they could recover by a judgment of this court in their favor.  *Id*.  Because ACLU already acquired responsive records without paying a fee, the fee waiver claim seeks an advisory opinion, which the Court cannot render.  *Id*.  The fee waiver claim is moot, and should be dismissed.

## CONCLUSION

Plaintiffs contend the federal defendants "are involved in pre-emptive planning and coordination with private, local, and federal entities to assist in efforts to further suppress Indigenous rights and environmental justice activism."  Doc. 1 at ¶7.  But as set forth above, most of the agencies (ACE, TSA, OLC,

FEMA) have had absolutely no role in planning for any kind of protest activity associated with the Keystone XL pipeline.  Other agencies (I&A, ACE) have no law enforcement role, but merely gather information. Even there, the agencies do not seek to suppress anybody's First Amendment rights.  They focus on "potential unlawful actions and violent tactics, rather than beliefs or ideas."  USA_DHS-I&A_000216. There is and has been no effort to suppress.

The agencies conducted searches and produced responsive information as required by FOIA.  Accordingly, the United States respectfully requests that this matter be summarily adjudicated in favor of the federal defendants.

DATED this 1st day of May, 2019.

KURT G. ALME
United States Attorney


/s/ Victoria L. Francis
Victoria L. Francis
Mark Steger Smith
Assistant U.S. Attorneys
Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), the attached brief is proportionately spaced, has a typeface of 14 points and contains 8,525 words, excluding the caption and certificates of service and compliance.

**DATED** this 1st day of May, 2019.

/s/ Victoria L. Francis
Victoria L. Francis
Mark Steger Smith
Assistant  U.S. Attorneys
Attorneys for Defendants